UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 16-60010-CIV-COHN/SELTZER

AUTONATION, INC.,

    Plaintiff,

v.

MARTIN PETERS,

    Defendant.
_____/

## ORDER GRANTING PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION

**THIS CAUSE** is before the Court on Plaintiff's Expedited Motion for Preliminary Injunction [DE 18] ("Motion"). The Court has carefully considered the Motion, the attached declarations and supporting exhibits [DE 28-1–28-3], Defendant's Response [DE 23], Plaintiff's Reply [DE 24], and the evidence and argument presented at a hearing held on April 25, 2016. At the Court's request, Plaintiff later filed certain supplemental authorities. See DE 39.[1] The Court finds as follows:

**I.   Background**

    **A.   Facts**

Plaintiff AutoNation, Inc. ("ANI"), based in Fort Lauderdale, owns and operates about 274 vehicle dealerships in 15 states. In December 2011, ANI hired Defendant Martin Peters as the General Manager of its Audi Peoria dealership in Peoria, Arizona. In July 2012, Peters transferred to the General Manager position at ANI's Ford

---

[1] The Court also directed the parties to submit evidence concerning the amount of bond that Plaintiff should be required to post for any preliminary injunction. See Fed. R. Civ. P. 65(c). As discussed below in Part II.D, only Plaintiff has filed information on the bond issue, and the Court will defer ruling on that issue until Defendant's filing is received.

Scottsdale dealership in Scottsdale, Arizona.  On three occasions while working for ANI, Peters signed "Confidentiality, No-Solicitation / No-Hire and Non-Compete Agreement[s]" (the "Agreements").  DE 18-1; DE 28-2 at 5-13; Pl.'s Hr'g Ex. 2.  The relevant provisions of the Agreements are substantially identical and require Peters (1) not to disclose to outside parties, or use for any purpose other than his work for ANI, confidential and proprietary business information that ANI owned and Peters received; (2) to inventory and return all such information within 5 business days after separating from ANI; and (3) for 12 months after separating from ANI, not to sell vehicles within 50 miles of the dealership where he had worked or within 10 miles of any ANI dealership (the "Restricted Area").

While employed as an ANI General Manager, Peters often received ANI's confidential and proprietary business information as part of his everyday duties.  ANI produced reports and other documents that detailed the finances and operations of its dealerships, as well as methods to help dealerships become more successful.  This unique information—which Peters could access through a password-protected central computer system—included vehicle-pricing tools, advertising spending and revenues generated by specific ads, costs and profits per vehicle, compensation plans, customer financing programs, and financial forecasts.[2]  Members of ANI's management team testified that if competing dealerships ever acquired this information, they could adjust their own practices in response and thereby gain competitive advantages over ANI.

---

[2] At the motion hearing, ANI presented testimony that its computer system allowed employees different levels of access to information depending on their specific roles within the company.  As the General Manager of the Ford Scottsdale dealership, Peters could access detailed information about all ANI dealerships in Arizona and all ANI Ford dealerships throughout the country.

Peters also obtained ANI's confidential and proprietary information through specialized training. He attended several ANI conferences and development programs limited to select employees. No competitors were allowed at these meetings, and outside presenters had to sign confidentiality agreements. The training encompassed many aspects of ANI's business, and presenters discussed internally developed best practices and strategies, expectations for managers, and business planning for the upcoming years. Attendees also received written training materials prepared by ANI.

From October 2014 to November 2015, Peters e-mailed a variety of ANI's confidential and proprietary documents to his personal e-mail account. See DE 28-3 (Decl. of Ricardo Puerto); Pl.'s Hr'g Exs. 18-19, 21, 23. Peters testified that he e-mailed these documents, as well as others throughout his employment with ANI, because he could never access ANI's system remotely with his personal computer. But at least two of the e-mail messages—one containing hyperlinks to Store Operating Reports, the other a spreadsheet reflecting vehicle-sales data—were sent on November 6, 2015. See DE 28-3 at 21, 23-24. On that date, ANI terminated Peters's employment due to a Ford audit that revealed certain fraudulent activities by Ford Scottsdale employees. The audit resulted in Ford charging the dealership more than $300,000.00. Peters claims that, after his discharge, he returned all confidential and proprietary information to ANI. But ANI's Vice President of Human Resources—to whom the Agreements require departing employees to return all such information, see DE 18-1 at 3—testified that he had received none of these materials from Peters.

In December 2015, Peters began working for Peoria Ford, a non-ANI dealership located within the Restricted Area. See Pl.'s Hr'g Ex. 42. Soon thereafter, Peters accepted a position as General Manager of Camelback Lincoln, another competing

3

dealership within the Restricted Area.  See Pl.'s Hr'g Ex. 43.  Peters continues to work at Camelback Lincoln and also serves in an advisory role for the adjoining Camelback Ford dealership.  See id.³

### B. Procedural History

On January 4, 2016, ANI brought this action against Peters.  ANI's current Amended Complaint [DE 11] pleads four claims:  misappropriation of trade secrets (Count I), conversion (Count II), breach of non-compete agreement (Count III), and breach of fiduciary duty (Count IV).  Counts I and II are based on Peters's alleged unauthorized taking of ANI's confidential and proprietary information and his failure to return that information.  See DE 11 at 9-11.  Count III concerns Peters's work for another dealership within the Restricted Area.  See id. at 11-12.  And Count IV relates to alleged conduct by Peters in connection with the Ford audit.  See id. at 12.  The Amended Complaint seeks preliminary and permanent injunctive relief, damages, and attorney's fees and costs.  See id. at 13-14.⁴  Peters has filed an Answer denying liability and pleading several affirmative defenses.  See DE 12.

On March 8, 2016, ANI filed its present Motion.  See DE 18.  ANI's request for a preliminary injunction is based on its claims that Peters misappropriated trade secrets

---

³ Peters testified that, before starting work for the other dealerships, he spoke with his former supervisors and was led to believe that ANI would not enforce the Agreements' non-competition provisions against him.  But one of the supervisors, ANI's Western Region President, confirmed that ANI never waived those provisions. See DE 18-1 at 8, ¶ 10 (clause in Agreements stating that waiver of any provision may not be established through failure to enforce it, but instead must be "in writing and executed by the party waiving the right").

⁴ Peters asserts that the Motion should be denied because ANI has not adequately pleaded that it is entitled to a preliminary injunction for some of its claims. The Court has considered Peters's arguments on this issue and finds them to be without merit.

4

and breached the non-competition provision of the Agreements.  ANI asks the Court to enter a preliminary injunction that (1) for a period of one year, bars Peters from being associated with any business "in competition with [ANI]"[5]; and (2) requires Peters and his associates to "return all [ANI] confidential, proprietary and trade secret information in whatever form, and to delete and purge any such information currently in their possession, custody or control from all electronic devices in their possession, custody or control."  Id. at 14-15.[6]  As described above, the Motion has been fully briefed and argued.

## II. Discussion

To obtain a preliminary injunction, ANI must establish four elements:  "(1) a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on [Peters]; and (4) that entry of the relief would serve the public interest."  Schiavo ex rel. Schindler v. Schiavo, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (per curiam).  Because a preliminary injunction is "an extraordinary and drastic remedy,"

---

[5] ANI confirmed at the hearing that this request is intended to cover dealerships within the Restricted Area.

[6] The Motion also requests that, for one year, Peters be prohibited from communicating with or soliciting any "customer, supplier, employee, salesperson, agent or representative of [ANI]."  DE 18 at 15.  Although the Agreements include a "No-Solicitation / No-Hire" clause that generally corresponds with this request, DE 18-1 at 4-5, ANI has offered no evidence or argument that Peters has violated or is likely to violate the requirements of this provision.  The Court therefore will not preliminarily enjoin Peters from engaging in the conduct that this clause proscribes.

Further, at the hearing, ANI suggested that the Court should allow a forensic expert to examine Peters's electronic devices to verify that none of ANI's confidential and proprietary information remains in his possession.  While such a measure may or may not be appropriate at a later time, the Court declines to order it now, since Peters has not yet had any chance to comply the preliminary injunction ordered herein.

5

it may not be granted unless the moving party "clearly carries the burden of persuasion as to the four prerequisites." Church v. City of Huntsville, 30 F.3d 1332, 1342 (11th Cir. 1994) (internal quotation marks omitted); see McDonald's Corp. v. Robertson, 147 F.3d 1301, 1306 (11th Cir. 1998). Nonetheless, if these requirements are met, a preliminary injunction is a proper remedy for misappropriation of trade secrets and breach of employee covenants. See Fla. Stat. § 688.003(1) ("Actual or threatened misappropriation [of trade secrets] may be enjoined."); id. § 688.003(3) ("In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order."); id. § 542.335(1)(j) ("A Court shall enforce a restrictive covenant by any appropriate and effective remedy, including, but not limited to, temporary and permanent injunction.").[7]

### A.   Substantial Likelihood of Success

#### 1.   Misappropriation of Trade Secrets

To prove a claim under Florida's Uniform Trade Secrets Act, Fla. Stat. §§ 688.001–688.009, a plaintiff must show that "(1) the plaintiff possessed secret information and took reasonable steps to protect its secrecy and (2) the secret it possessed was misappropriated, either by one who knew or had reason to know that the secret was improperly obtained or by one who used improper means to obtain it." Del Monte Fresh Produce Co. v. Dole Food Co., 136 F. Supp. 2d 1271, 1291 (S.D. Fla. 2001) (citing Fla. Stat. § 688.002). "To qualify as a trade secret, the information that the plaintiff seeks to protect must derive economic value from not being readily

---

[7] The parties do not dispute that Florida law applies to ANI's claims here. See DE 18-1 at 7 (clause in Agreements providing that they "will be governed by and construed in accordance with the laws of the State of Florida, without regard to principles of conflicts of laws").

ascertainable by others and must be the subject of reasonable efforts to protect its secrecy." Id.; see Fla. Stat. § 688.002(4).  But "if the information in question is generally known or readily accessible to third parties, it cannot qualify for trade secret protection." Del Monte Fresh Produce Co., 136 F. Supp. 2d at 1291.

Both in his role as a General Manager and through specialized in-house training, Peters was given access to a broad range of confidential and proprietary information about the inner business workings of ANI and its dealerships.  Much of this information concerns unique methods and processes that ANI developed over time through considerable effort and expense.  See Fla. Stat. § 688.002(4); Vas Aero Servs., LLC v. Arroyo, 860 F. Supp. 2d 1349, 1359 (S.D. Fla. 2012) ("Documents containing strategic marketing plans and pricing information have been held to constitute trade secrets under Florida law." (citations omitted)).  Further, the evidence shows that keeping this information secret from competing dealerships allows ANI to maintain key advantages in the vehicle-sales market.  See id.  The record also reflects that ANI took reasonable steps to maintain the secrecy of the information, such as holding it in a password-protected central system, requiring employees to sign confidentiality agreements, and limiting specialized training sessions to select employees.

More, the record demonstrates that Peters repeatedly e-mailed ANI's secret information to his personal account and never returned that information after his discharge.  Peters maintains that he e-mailed the documents simply because he could not access ANI's computer system remotely.  At a minimum, though, the e-mails Peters sent on the day he was terminated provide strong evidence of his intent to wrongfully obtain ANI's secret information.  And testimony from ANI's Vice President of Human Resources refutes Peters's unsupported claim that he returned all trade-secret

information to ANI.  Peters further emphasizes the lack of evidence that he shared any of ANI's trade secrets with his new employers or anyone else.  As ANI correctly notes, however, its misappropriation claim does not require proof that Peters disclosed the secret information he improperly acquired from ANI.  See Fla. Stat. § 688.002(2).  For these reasons, ANI has clearly shown that it is substantially likely to succeed on its claim alleging misappropriation of trade secrets.

### 2. Breach of Non-Compete Agreement

ANI's Motion also seeks to enforce the Agreements' provision barring Peters, for 12 months after his discharge, from selling vehicles within 50 miles of the ANI dealership where he worked or within 10 miles of any ANI dealership.  The Florida statute governing employee covenants not to compete "requires the employer to plead and prove (1) the 'existence of one or more legitimate business interests justifying the restrictive covenant' and (2) 'that the contractually specified restraint is reasonably necessary to protect' the established interests of the employer."  N. Am. Prods. Corp. v. Moore, 196 F. Supp. 2d 1217, 1228 (M.D. Fla. 2002) (quoting Fla. Stat. § 542.335(1)(b), (c)).  As relevant here, a "legitimate business interest" includes "[t]rade secrets, as defined in [Fla. Stat. §] 688.002(4)," "[v]aluable confidential business or professional information that otherwise does not qualify as trade secrets," and "[e]xtraordinary or specialized training."  Fla. Stat. § 542.335(1)(b).[8]  "Once the employer establishes a *prima facie* case the burden shifts to the employee to show that the restriction is 'overbroad, overlong, or otherwise not reasonably necessary to protect'

---

[8] See also Fla. Stat. § 542.335(1)(h) ("A court shall construe a restrictive covenant in favor of providing reasonable protection to all legitimate business interests established by the person seeking enforcement.").

the established interests of the employer." Moore, 196 F. Supp. 2d at 1228 (quoting Fla. Stat. § 542.335(1)(c)).

As already discussed, Peters possesses extensive confidential and proprietary information about ANI's business practices—including valuable trade secrets—some of it learned through specialized training programs developed and conducted by ANI. Even if Peters returned the physical and digital materials containing the trade secrets, much of this information would remain within his knowledge. And he could use that knowledge against ANI in his employment with a competing dealership. The Court thus concludes that ANI's legitimate business interests justify the non-competition restrictions on Peters, and that those restrictions are reasonably necessary to protect ANI's interests.

More, Peters has raised no specific challenge to the geographic scope or length of the restrictions. Nor does the Court see any problems in this regard. A one-year period is long enough to reasonably protect ANI's interests, but short enough not to unduly burden Peters's ability to work in his chosen profession wherever he wishes. The restriction is also reasonable in terms of geography. ANI has offered illustrative exhibits showing that 30 non-ANI dealerships operate outside the Restricted Area but within 50 to 110 miles of Ford Scottsdale. See Pl.'s Hr'g Ex. 45. Another such exhibit shows that Peters is free to work throughout the vast majority of the United States. See Pl.'s Hr'g Ex. 45. Last, several federal and state courts in Florida have granted preliminary injunctions to enforce similar restrictions against ANI's former managers. See, e.g., AutoNation, Inc. v. O'Brien, 347 F. Supp. 2d 1299 (S.D. Fla. 2004); Hatfield v. AutoNation, Inc., 939 So. 2d 155 (Fla. 4th DCA 2005); Maki v. AutoNation, Inc., 895 So. 2d 453 (Fla. 4th DCA 2005) (per curiam), aff'g 2004 WL 1925479 (Fla. Cir. Ct.

Aug. 25, 2004); AutoNation, Inc. v. Hankins, 2003 WL 22852206 (Fla. Cir. Ct. Nov. 24, 2003). The Court therefore finds that ANI has clearly proven a substantial likelihood of success on its claim for breach of non-compete agreement.

### B.   Irreparable Harm, Balancing of Harms, and Public Interest

Having determined that ANI is substantially likely to succeed on its pertinent claims, the Court likewise concludes that ANI has clearly established the other three requirements for entry of a preliminary injunction. Again, Peters possesses valuable trade secrets that he can use (and perhaps disclose) to give his new dealership a substantial and unfair competitive advantage over ANI in the marketplace. This situation poses immediate and irreparable harm to ANI. See Arroyo, 860 F. Supp. 2d at 1359 (holding that if former employee disclosed similar misappropriated trade secrets to employer's competitors, employer "would unquestionably suffer irreparable harm"). Too, Peters's violation of the Agreements' non-competition restrictions gives rise to a presumption of irreparable harm to ANI. See Fla. Stat. § 542.335(1)(j) ("The violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant."). And, as noted earlier, Peters has offered nothing to rebut this presumption.

These irreparable injuries to ANI also outweigh any harm to Peters in requiring him to return the trade secrets he improperly took from ANI, and to comply with the limited non-competition restrictions that he agreed to as a condition of his employment. See Arroyo, 860 F. Supp. 2d at 1363; O'Brien, 347 F. Supp. 2d at 1308. Further, the public interest supports an injunction that would (1) protect from wrongful taking a Florida-based business's trade secrets, which required substantial investment to develop; and (2) enforce contractual non-competition rights that the Florida Legislature

has deemed important enough to protect by statute.  See Arroyo, 860 F. Supp. 2d at 1363; O'Brien, 347 F. Supp. 2d at 1308; Pitney Bowes Inc. v. Acevedo, 2008 WL 2940667, at *6 (S.D. Fla. July 28, 2008).

### C. Length of Injunction

The supplemental authorities filed by ANI explain that, in appropriate circumstances, a court has discretion to equitably extend the duration of a contractual non-competition provision.  See, e.g., Capelouto v. Orkin Exterminating Co. of Fla., 183 So. 2d 532, 534-35 (Fla. 1966).  ANI contends that such an extension is warranted here with respect to the Agreements' non-competition restrictions.  ANI reasons that limiting the injunction to one year from the date of Peters's discharge would effectively reward him for violating the restrictions after that date.

The preliminary injunction ordered herein will remain in effect only until this case is decided on the merits.  And trial is scheduled for the two-week period starting September 6, 2016—two months before the non-competition period would expire.  See DE 5 at 1 (Order Setting Calendar Call and Trial Date).  Thus, the issue ANI raises would only be relevant to any permanent injunction issued as part of a final judgment.  At this time, therefore, the Court finds it premature to consider any equitable extension of the non-competition period.

### D. Amount of Bond

The Court, however, must determine the amount of bond, if any, that ANI should be required to post for the preliminary injunction against Peters.  See Fed. R. Civ. P. 65(c) (providing that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined").  At the

11

motion hearing, the Court directed the parties submit evidence on the amount of bond that should be required if the Court were to enter a preliminary injunction. In so doing, the Court intended that the parties would file such evidence before the Court ruled on ANI's Motion. Generally consistent with this understanding, ANI filed a supplemental brief arguing that no bond should be required or, at most, the amount of bond should be limited to the attorney's fees Peters has incurred. See DE 40.

Peters, however, has filed a Motion for Clarification [DE 41], stating that he was "under the clear impression" that the parties were to file evidence on the bond amount only if the Court granted the Motion. Further, Peters requests that if the Court intended to have the parties file their evidence before ruling on the Motion, then he be allowed to do so by May 13, 2016. Peters explains that his counsel will be traveling most of next week and will need time to prepare the necessary declaration and brief.

Though Peters's counsel misunderstood the Court's instructions, there was a conceivable basis for this mistake, and it was made in good faith. So although this Order will take effect immediately, the Court will defer ruling on the bond issue until after Peters can be heard on that matter. The Court will grant Peters's request to file his papers by May 13, 2016.

### III.    Conclusion

For the reasons discussed herein, it is

**ORDERED AND ADJUDGED** as follows:

1. Plaintiff's Expedited Motion for Preliminary Injunction [DE 18] is **GRANTED**;
2. Until further Order of this Court, Defendant Martin Peters and his agents, servants, employees, attorneys, and all others in active concert or participation with him who receive actual notice thereof by personal service or otherwise, are

       **ENJOINED** from establishing, engaging, owning, managing, operating, controlling, or being a director, officer, employee, salesperson, agent, lender, or representative of any business in competition with Plaintiff AutoNation, Inc., within the Restricted Area (as defined by the parties' Agreements);

3. Defendant Martin Peters and his agents, servants, employees, attorneys, and all others in active concert or participation with him who receive actual notice thereof by personal service or otherwise, are **ORDERED**, by **May 20, 2016,** to return all of Plaintiff AutoNation, Inc.'s confidential, proprietary, and trade secret information in whatever form, and to delete and purge any such information currently in their possession, custody or control from all electronic devices in their possession, custody or control; and

4. Defendant's Motion for Clarification [DE 41] is **GRANTED**.  By **May 13, 2016,** Defendant shall file any evidence or briefing concerning the amount of bond that should be required for the preliminary injunction.  Pending receipt of that filing, the Court **DEFERS** ruling on the bond issue.

       **DONE AND ORDERED** in Chambers at Fort Lauderdale, Broward County, Florida, this 29th day of April, 2016.

       _____
       JAMES I. COHN
       United States District Judge

Copies provided to:

Counsel of record via CM/ECF